IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENEDINO CALDERON,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>LARRY SCHRIBNER, Warden, Calipatria State Prison,<br><br>　　　　　　Respondent. | No. 2:06-cv-00770-TMB<br><br>MEMORANDUM DECISION |

　　　　Petitioner Enedino Calderon, a state prisoner appearing through counsel, has petitioned for a writ of habeas corpus under 28 U.S.C. 2254.  Calderon is presently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Calipatria State Prison, Calipatria, California.

I.  BACKGROUND/PRIOR PROCEEDINGS

　　　　In January 2004 Calderon was convicted by a jury of kidnapping for ransom (Count One), robbery (Count Two), false imprisonment (Count Three), and assault with a firearm (Count Four).  The jury also found true an allegation that the victim of the kidnapping suffered bodily harm.  The jury further found that Calderon personally used a handgun during the commission of Counts One through Four.  Calderon was sentenced to a prison term of life without parole ("LWOP") on Count One, plus four years consecutive for the firearm enhancement associated with Count One.  The trial court also imposed prison terms on Counts Two through Four and the associated enhancements, but stayed the prison terms pursuant to California Penal Code § 654.

　　　　Calderon timely appealed to the California Court of Appeal, Third Appellate District, which reversed the conviction as to Count Three and affirmed the judgment in all other respects

in an unpublished decision.[1] The California Supreme Court summarily denied review without opinion or citation to authority on January 18, 2006. Calderon's conviction became final 90 days later, April 18, 2006, when his time to petition for a writ of *certiorari* in the United States Supreme Court lapsed.

On April 6, 2007, Calderon, represented by counsel, filed a petition for a writ of habeas corpus in the California Supreme Court, which denied his petition citing *People v. Duvall* (1995) 9 Cal.4th 464, 474.[2]

Calderon, appearing *pro se*, timely filed a petition for relief in this Court on April 6, 2006 (date stamped April 10, 2006).[3] On April 5, 2007, Calderon, represented by counsel, filed his First Amended Petition for relief with leave of court.

The following description of the facts of the crime is distilled from the decision of the California Court of Appeal.[4] In the early hours of the morning the victim arrived at work, parked his truck in front of his office, and walked towards the front door of the business. As he did so, three males wearing dark clothing ran toward him. Two of the men were wearing masks, and one of the masked men was armed with a gun. The men grabbed the victim and started beating him about the face, causing him to fall to the ground. One of the assailants pointed the gun at him, and the victim heard what he perceived to be a gunshot. The victim managed to get up and run towards his truck; however, the men caught him and continued beating him, hitting him in the face and on the neck with the gun. During the struggle, the victim managed to unmask the two masked men and recognized them as Calderon and his brother, his former employees. Calderon told the victim nothing would happen to him if he behaved. Calderon, his brother, and

---

[1] Opinion available online at 2005 WL 3787840.

[2] A denial with a pinpoint citation to *Duvall* is construed as a denial based upon a procedural defect and may mean that the available state remedies have not been exhausted as the California Supreme Court has not been given a fair opportunity to correct the constitutional violation. *See Medley v. Runnels*, 506 F.3d 857, 869 (9th Cir. 2007).

[3] The petition, filed *pro se*, consisted of a single page written entirely in Spanish. This Court appointed the Federal Public Defender to represent Calderon. Dkt. 4.

[4] The Court accepts these findings in the absence of clear and convincing evidence that they are erroneous. 28 U.S.C § 2254(e)(1).

the other assailant tied the victim up with red tape. As they were doing so, the victim had the opportunity to observe Calderon and his brother for a couple of minutes before a small, blue car pulled up next to the victim's truck. At that point, the assailants taped the victim's eyes shut, placed him in the trunk of the blue car, got into the vehicle, and drove away from the parking lot. Calderon also told the victim that he was being kidnapped for ransom of $500,000.

## II. GROUNDS PRESENTED/DEFENSES

In his amended petition Calderon raises four grounds: (1) Denial of due process by failing to obtain his personal consent to share an interpreter; (2) denial of due process by excluding his eyewitness identification expert; (3) ineffective assistance of counsel by failing to move that the trial court impose a juvenile sentence under California law; and (4) imposition of a LWOP sentence constituted cruel and unusual punishment, and the failure of appellate counsel to raise the issue constituted ineffective assistance of counsel.

Respondent contends that, except as to the first and second grounds, Calderon has failed to properly exhaust his state court remedies.

In his traverse Calderon voluntarily abandoned his third ground.

## III. STANDARD OF REVIEW

Because Calderon filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]

---

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[6] *Williams v. Taylor*, 529 U.S. at 412.

Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable, "not just incorrect."[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[9]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court,[11] which in this case was that of the California Court of Appeal.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[12]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and performed an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[13]  The scope of this review is for clear error of the state court ruling on the petition:

---

[7] *Carey v. Musladin*, 549 U.S. 70, ___, 127 S.Ct. 649, 654 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. ___, ___, 128 S.Ct. 743, 746-47 (2008) (per curiam).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[9] *Schriro v. Landrigan*, 550 U.S. ___, ___, 127 S.Ct. 1933, 1939 (2007).

[10] *Fry v. Pliler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 504 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

[12] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[13] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams*. . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[14]

## IV.  DISCUSSION

Ground 1:  Personal Consent to Share Interpreter.

In this case, counsel for the co-defendants consented to the use of a "shared" interpreter. Calderon argues that the consent by his counsel was insufficient; that his express personal consent was required.  As the California Court of Appeal noted,[15] the waiver of the right to an interpreter when an interpreter is required under California law must be made personally by the defendant.  The Federal Court Interpreters Act contains a similar provision requiring the waiver to be "made expressly by [the defendant] on the record after opportunity to consult with counsel."[16]  That is not the issue before this Court.  The precise issue before this Court is whether the use of a shared interpreter must be affirmatively assented to by a criminal defendant.[17]

The arguments advanced by Calderon before this Court are foreclosed by the decision of the Ninth Circuit in *United States v. Yee Soon Shin*:[18]

> Shin and Jung contend that the district court erred by failing to assign separate interpreters at trial.  A criminal defendant who "speaks only or primarily a language other than the English language" has a statutory right under the Court Interpreters Act to a court-appointed interpreter when his comprehension of the proceedings or ability to communicate with counsel is impaired.  28 U.S.C. §

---

[14] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[15] The decision of the California Court of Appeal on this point is set forth in Appendix 1.

[16] 28 U.S.C. § 1827(f)(1).

[17]  It appears to be settled in this Circuit that the use of interpreter, where necessary for a criminal defendant who has a limited understanding of the English language is constitutionally required under both the Confrontation Clause and the right to counsel embodied in the Sixth Amendment.  *Chacon v. Wood*, 36 F.3d 1459, 1464–65 (9th Cir. 1994), *overruled on other grounds*, 28 U.S.C. § 2253(c).

[18] 953 F.2d 559, 561 (9th Cir. 1992) (citations omitted).

1827(d)(1). The Court Interpreters Act does not, however, require separate interpreters for each defendant in multidefendant cases.

Shin and Jung also contend that sharing one interpreter violated their rights under the Fifth and Sixth Amendments. As a constitutional matter, the appointment of interpreters is within the district court's discretion. Appellants did not object in the district court. A lack of objection weighs against a finding of abuse of discretion by the trial court. Because appellants did not object, the district court did not abuse its discretion in assigning one interpreter.

Calderon is not entitled to relief under his first ground

Ground 2:  Exclusion of Eyewitness Identification Expert.

Calderon's counsel sought to present an eyewitness identification expert to establish that the victim had misidentified Calderon. The trial court, upon the motion of the prosecution, excluded the testimony of the expert. Calderon argues that the trial court's ruling violated his federal constitutional rights to confrontation, due process, and to present a defense under the Sixth and Fourteenth Amendments. The Court of Appeal rejected Calderon's arguments.[19]

Calderon's arguments are foreclosed by the recent decision of the Ninth Circuit in *Moses v. Payne*,[20] which held:

> Because Moses could not successfully argue that Rule 702 by its terms infringed his constitutional right to present a complete defense, Moses's argument is best interpreted as challenging the trial court's exercise of discretion in this case to exclude expert testimony. Moses has not identified, and we have not found, a Supreme Court case holding that such an exercise of discretion to exclude expert testimony violated a criminal defendant's constitutional right to present relevant evidence. As noted above, the Supreme Court's cases have focused only on whether an evidentiary rule, by its own terms, violated a defendant's right to present evidence. Because the Supreme Court has not directly considered this issue, the state appellate court's determination that the trial court's exercise of discretion to exclude expert testimony under Rule 702 did not violate Moses's constitutional rights cannot be contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Van Patten,* 128 S.Ct. at 746-47; *Musladin,* 127 S.Ct. at 653-54.

Calderon is not entitled to relief under his second ground.

---

[19] The decision of the California Court of Appeal on this point is set forth in Appendix 2.

[20] 543 F.3d 1090, 1103 (9th Cir. 2008).

Ground 4:  Life Without Possibility of Parole.[21]

Calderon, who was 17 at the time of the crime, was sentenced to life without possibility of parole.  Calderon argues that a "sentence of life without possibility of parole for the crime of kidnapping for ransom and with great bodily injury imposed on a 17 year (*sic*) old offender violated the constitutional prohibitions against cruel and unusual punishments."  The Supreme Court has addressed the question of the constitutional limitations on imposing capital punishment on juveniles in three cases in the past 20 years.  In *Thompson v. Oklahoma*,[22] a plurality of the Supreme Court held that the Eighth Amendment prohibited imposition of the death penalty on a juvenile under the age of 16 at the time of the crime.  The next year, in *Stanford v. Kentucky*,[23] the Supreme Court held that the Eighth Amendment did not prohibit the imposition of capital punishment on juveniles who had attained the age of 16 or 17 at the time the crime was committed.  Then, in March 2005 the Supreme Court decided *Roper v. Simmons*,[24] in which it overruled *Stanford*, holding that the Eighth Amendment prohibited the imposition of the death penalty on any offender who was under the age of 18 at the time the offense was committed.[25]

Unfortunately for Calderon, *Simmons* not only does not assist him, it in fact eviscerates his Eighth Amendment argument.  In *Simmons*, the Missouri Supreme Court "set aside Simmons' death sentence and resentenced him to life imprisonment without eligibility for

---

[21] There being no reasoned state court decision addressing this issue, this Court must determine it *de novo* on the record before it.  *Spears v. Greiner, supra*.

[22] 487 U.S. 815, 818–38 (1988).

[23] 492 U.S. 361, 380 (1989).

[24] 543 U.S. 551, 575–79 (2005).

[25] The Court notes that in January 2004, when the sentencing court imposed the LWOP sentence, *Stanford* was the law of the land.  It seems to follow, *a fortiori*, if the imposition of the death penalty on a 17-year old did not violate the Eighth Amendment, then LWOP, a lesser sentence, would not either.  In this case, however, Calderon's conviction did not become final until April 2006, more than a year after *Simmons* was decided.  Calderon filed his petition for habeas relief in the California Supreme Court in April 2007, more than two years after *Simmons* and, in fact, cited and argued *Simmons* in that petition.  Consequently, for the purpose of deciding the petition before it, the Court will consider *Simmons* as the controlling decision of the Supreme Court at the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. at 412.

MEMORANDUM DECISION
*Calderon v. Schribner*, 2:06-cv-00770-TMB            7

probation, parole, or release except by act of the Governor."[26]  The Supreme Court affirmed.[27] Consequently, it cannot be said that the imposition of the LWOP sentence in this case on Calderon as a juvenile is contrary to the holding of the Supreme Court.[28]

     Calderon also argues that imposition of a LWOP sentence for kidnapping for ransom in which bodily injury, but not death, occurs itself violates the Eighth Amendment.  Although Calderon may have received a severe sentence and the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."[29] Balanced against the proportionality principle is the corollary principle that the determination of prison sentences is a legislative prerogative not within the province of the courts.[30]  The Ninth Circuit has held that "'only extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment."[31]

     To determine proportionality, a court must examine: "(1) 'the gravity of the offense and the harshness of the penalty'; (2) 'the sentences imposed on other criminals in the same jurisdiction'; and may include (3) 'the sentences imposed for commission of the same crime in other jurisdictions.'"[32]  Balanced against the proportionality principle is the corollary principle that the determination of prison sentences is a legislative prerogative not within the province of the courts.[33]  Also, as noted in 1991, the decisions of the Supreme Court regarding proportionality to that time had not always been clear or consistent in all respects and its precise

---

[26] 543 U.S. at 560.

[27] *Id.*

[28] If the principles underlying *Simmons* are to be extended to imposing a LWOP sentence on juveniles, it is for the Supreme Court, not this Court, to decide.

[29] *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alterations and emphasis omitted).

[30] *Rummel v. Estelle*, 445 U.S. 263, 275–76 (1980).

[31] *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (quoting *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.1992).

[32] *Cacoperdo,* 37 F.3d at 507 (quoting *Solem,* 463 U.S. at 290-92).

[33] *Rummel v. Estelle*, 445 at 275–76.

contours unclear.[34]  It is against this backdrop of the law as it existed at the time the California courts rendered their decisions that those decisions must be examined.

The California Legislature has chosen to make kidnapping for the purpose of ransom, extortion or robbery with bodily harm short of death, although not involving homicide, punishable by life imprisonment without possibility of parole.[35]  California Courts have consistently found that imposition of a LWOP sentence for those crimes does not constitute cruel or unusual punishment because the Legislature could reasonably decide that crimes which involve an inherent danger to the life of the victim are particularly heinous even if no death occurs.[36]

Calderon has failed to show that a sentence of LWOP is constitutionally disproportionate to his individual culpability.  As a petitioner challenging the constitutionality of his sentence, under California law, Calderon must show that (1) the punishment is not warranted in light of the specific circumstances of his offense, (2) that the punishment imposed by the California Penal Code for his offense is harsher than that imposed for more serious offenses, and (3) that the punishment imposed by the California Penal Code for his offense is harsher than that imposed in other jurisdictions for the same offense.[37]

In this case; Calderon and his co-defendants kidnapped, robbed, and assaulted the victim while pointing a gun at him.  The offense therefore involved "inherent danger to the life" of the victim and was "particularly heinous."  Under such circumstances, Calderon failed to show that his implicit primary term of life was grossly disproportionate to his offense and his individual culpability.

---

[34] *Harmelin v. Michigan*, 501 U.S. 957, 997–98 (1991) (Kennedy, J. concurring).

[35] Cal. Pen. Code § 209(a).

[36] *People v. Chacon*, 43 Cal.Rptr.2d 434 (Cal.App. 1995) (aggravated kidnapping for ransom); *People v. Castillo*, 284 Cal.Rptr. 382 (Cal. App. 1991) (same); *People v. Ordonez*, 277 Cal.Rptr. 382 (Cal. App. 1991) (same).

[37] *See People v. Crooks,* 64 Cal.Rptr.2d 236, 241-43 (cal. App. 1997) (citing *People v. Thomson,* 29 Cal.Rptr.2d 847, 850 (Cal.App. 1994) and *In re Lynch,* 503 P.2d 821, 930-31 (Cal. 1972)).

The standards applied by the California courts are consistent with the standards applied by the Supreme Court to non-capital sentences. Consequently, this Court cannot say that the determination of the California courts that the imposition of a LWOP sentence for aggravated kidnapping for ransom does not violate the Eighth Amendment was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[38] Nor can this Court find that the state courts unreasonably applied the correct legal principle within the scope of *Andrade–Williams-Landrigan*; *i.e.*, the state court decisions were more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Calderon also argues that the failure to raise this issue renders his representation by appellate counsel ineffective. The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[39] Because the imposition of a LWOP sentence on a 17-year old does not violate the Eighth Amendment, the failure of appellate counsel to raise that issue can hardly constitute ineffective assistance of counsel. No authority supported that argument and controlling authority was directly to the contrary.

Calderon is not entitled to relief under his fourth ground.[40]

V. CONCLUSION and ORDER

Calderon is not entitled to relief under any grounds raised in the petition. Accordingly,

**IT IS ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

---

[38] 28 U.S.C. § 2254(d).

[39] *See Jones v. Barnes*, 463 U.S. 745, 751–52 (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir.1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

[40] Although Respondent contends this claim is unexhausted, the Court need not reach this issue as it may deny the petition on the merits notwithstanding that the Petitioner has failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(2).

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[41]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  See Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter judgment accordingly.

Dated:  January 12, 2009.

s/ Timothy M. Burgess
TIMOTHY M. BURGESS
United States District Judge

---

[41] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).

APPENDIX 1

Defendants contend their convictions must be reversed because the trial court deprived them of the constitutional right to their own interpreters, without first obtaining defendants' personal waivers.

Article I, section 14 of the California Constitution states that "[a] person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." In *People v. Aguilar* (1984) 35 Cal.3d 785 (hereafter *Aguilar*), the California Supreme Court stressed the importance this right, which enables the defendant to understand and fully participate throughout the criminal proceedings. (*Id.* at pp. 790-791.) Because of the crucial nature of the right to an interpreter, defense counsel may not waive it; to be effective, a waiver must be personally made by the defendant. (*Id.* at p. 795 .)

Here, at the preliminary hearing, one interpreter interpreted testimony and one or two other interpreters were available for defendants and their codefendant, Julio Zamora, who eventually pled no contest before voir dire commenced. With the approval of defense counsel, the court used a team approach, whereby one interpreter would interpret the proceedings for the defendants and the second interpreter was available to handle any communications between defendants and their attorneys. The court advised defendants that if they wished to speak to their attorneys, they should raise their hands and the proceedings would be stopped while they conferred with counsel with the aid of an interpreter. Defendants took advantage of this option on a few occasions.

Throughout most of the trial, the court continued to use this team approach, and counsel continued to agree to the procedure. However, defendants shared one interpreter when the verdict was read, at sentencing, and on a few occasions during pretrial proceedings.

In addition, on the afternoon of December 8, defense counsel agreed to proceed with only one interpreter during a portion of Enedino's testimony because the second interpreter was delayed by a traffic accident. The second interpreter arrived approximately one hour later. For a short period of time while Enedino was testifying the next day, the second interpreter assisted Ismael Castro, a non-English speaking prosecution witness testifying under a grant of immunity, to talk to his attorney.

Defendants argue that reversal is required because they did not each have their own interpreter at all stages of the proceedings and the sharing of an interpreter may have impaired their right to communicate with counsel. They claim that sharing an interpreter increased the risk that the one defendant and his counsel might overhear consultations between the other defendant and counsel, which could inhibit their discussions given that defendants had conflicting defenses. Moreover, they argue, if one of the defendants used the shared interpreter to confer with counsel, this deprived the remaining defendant of the ability to communicate with his own attorney.

A similar argument was made in *People v. Rodriguez* (1986) 42 Cal.3d 1005 (hereafter *Rodriguez* ), a case in which the defendants periodically shared the services of one interpreter while another interpreter was used to assist Spanish-speaking witnesses. (*Id.* at pp. 1009-1010, 1013-1014.) *Rodriguez* stated that "the best and preferred" method "is to require that each defendant have assigned to him an interpreter who remains at his side throughout the

proceedings, unless such assistance has been waived. [Citation.] By so providing, speculation regarding possible adverse consequences arising out of shared or absent interpreters can be avoided."(*Id.* at p. 1013.)

However, even where there has been an interference with the right to an interpreter, reversal is not required if the reviewing court determines the error is harmless beyond a reasonable doubt. (*Rodriguez, supra,* 42 Cal.3d at p. 1010; *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]; *People v. Chavez* (1991) 231 Cal.App.3d 1471, 1477.) The prejudice must be apparent from the trial record, and "[t]he test is whether an actual material interference with the defendant's rights has been shown or even asserted."(*Rodriguez, supra,* 42 Cal.3d at p. 1014, fn. 6.) The error is harmless if the appellate record does not show an actual interference with the ability to understand the trial or consult with counsel during a critical stage of the proceeding, as demonstrated by remarks by counsel, the court, or defendants. (*Id.* at p. 1015.) But the error might be prejudicial where the defendants must share an interpreter and their defenses are conflicting. (*Id.* at p. 1014.)

As we will explain, assuming the procedure of using one interpreter to translate testimony and one interpreter to assist in communicating with counsel requires a defendant's personal waiver, it appears that under this team approach, which was used during the majority of the trial, neither defendant was deprived of the ability to understand the proceedings if the other defendant wanted to confer with counsel. (Compare *People v. Resendes* (1985) 164 Cal .App.3d 812, 815 [use of one shared interpreter throughout the trial to interpret both the proceedings and conferences with counsel forced defendants to sacrifice either their understanding of the proceedings or the ability to communicate with counsel].) Thus, reversal is not required because the failure to obtain defendants' personal waivers was harmless beyond a reasonable doubt.

As in *Rodriguez,* the record here fails to show that either defendant's ability to communicate or comprehend was impeded, or that any difficulties arose from the use of a shared interpreter for attorney communications, while a second interpreter translated witness testimony and helped witnesses who spoke the same language as defendants. (*Rodriguez, supra,* 42 Cal.3d at p. 1014.) There simply is no evidence an interpreter was unavailable at a critical time. (*Rodriguez, supra,* 42 Cal.3d at p. 1015; *People v. Chavez, supra,* 231 Cal.App.3d at p. 1478 [defendants were not prejudiced by use of one interpreter during reading of the instructions].)

Contrary to defendants' suggestion otherwise, they did not have conflicting defenses, as opposed to merely differing defense strategies. Enedino's strategy was an all-or-nothing defense, and he objected to an instruction on the lesser included offense of simple kidnapping, which was preferred by José. However, both defendants argued that they did not kidnap Arreola and that his identification of them was infirm. Neither defendant attempted to implicate his codefendant, and they did not have conflicting alibis. This is not a case where one defendant argued "we did not kidnap the victim at all," and the other defendant admitted they kidnapped the victim but argued they did not do so for ransom.

Moreover, defense counsel did not make any remarks indicating that any problems occurred from sharing an interpreter. In fact, counsel agreed to the procedure, which indicates neither attorney

viewed codefendant's counsel as an opponent with a conflicting defense.  This lack of conflict is also reflected by the fact that counsel worked in tandem during voir dire, with Enedino's attorney deferring to the decisions and juror selections of José's attorney.

[Omitted is a discussion of an issue raised solely by Jose]

"This is not a case where all means of communication or comprehension were absent; rather, an interpreter was at all times available and at hand. The question is whether speculation that some material interruption in access to the interpreter *may* have occurred is sufficient to require reversal." (*Rodriguez, supra,* 42 Cal.3d at pp. 1015-1016.)  It is not.  (*Id.* at p. 1016.)  On this record, we conclude that any error was harmless beyond a reasonable doubt.

APPENDIX 2

According to defendants, the trial court erred in granting the People's motion to exclude expert testimony concerning the infirmities of eyewitness identification. We review the trial court's order for abuse of discretion. (*People v. McDonald* (1984) 37 Cal.3d 351, 376 (hereafter *McDonald*),overruled in part on other grounds in *People v. Mendoza* (2000) 23 Cal.4th 896, 914; *People v. Sanders* (1995) 11 Cal.4th 475, 508 (hereafter *Sanders* ).)

In *McDonald,* the California Supreme Court held that "[w]hen an eyewitness identification of the defendant is a key element of the prosecution's case but is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury, it will ordinarily be error to exclude that testimony." (*McDonald,* supra, 37 Cal.3d at p. 377.) But *McDonald* cautioned that "such evidence will not often be needed, and in the usual case the appellate court will continue to defer to the trial court's discretion in this matter." (*Ibid.*)

The victim in *McDonald* was shot and killed by a black man at a traffic intersection. No evidence linked him to the crime except eyewitness testimony, making the accuracy of the identifications a crucial factor in the case. However, the testimony was equivocal at best and involved many factors that could have raised reasonable doubt as to the accuracy of the identification, particularly cross-racial identification discrepancies. Several of the eyewitnesses testified that their view of the crime was partially blocked and obscured by rush-hour traffic, one eyewitness testified that the defendant was definitely not the killer, and the defendant had a strong alibi defense. *McDonald* concluded that the eyewitness identifications were not corroborated by evidence which would provide independent reliability. (37 Cal.3d at pp. 375-376.)

In this case, unlike in *McDonald,* the eyewitness testimony was "strong and unequivocal" (*Sanders, supra,* 11 Cal.4th at p. 509) and did not involve uncorroborated cross-racial identifications. Arreola knew defendants, who were his former employees; and ample other evidence pointed to defendants as the culprits. Enedino's fingerprints were on the tape used to bind Arreola; José's car, or one like it, was observed at the crime scene by Dill; and shortly after the kidnapping, blood was found in José's car and on clothing at defendants' residence, and defendants were found in possession of six $100 bills, which was the denomination of the bills stolen from Arreola. In addition, Enedino's handwriting was similar to that found on the ransom note; shell casings found at the crime scene were similar to those found at defendants' home; and the .38-caliber gun belonging to Enedino's girlfriend was missing. Defendants were together on the morning of the kidnapping, did not have an alibi, and were absent from their home at the time Arreola was attacked. And following the kidnapping, Enedino appears to have switched cars, which supports an inference of guilt.

Citing *People v. Walker* (1986) 185 Cal.App.3d 155 (hereafter *Walker*), defendants argue that the evidence is not sufficiently corroborative; it is merely suggestive of guilt. Their reliance on *Walker* is misplaced.

*Walker* simply held that the inference drawn from the fact the defendant committed other crimes were insufficient to corroborate the eyewitness identification given the crimes did not involve a unique modus operandi. (*Walker, supra,* 185 Cal.App.3d at p. 165.) The present case does not involve similarly weak corroborating evidence. Although defendants attempted to provide innocent explanations for some of the evidence, it is more than sufficient to corroborate Arreola's eyewitness identification and to show that the trial court did not abuse its discretion in excluding the expert testimony. (*People v. Jones* (2003) 30 Cal.4th 1084, 1112 [that corroborating testimony could be impeached by proof of bias did not negate corroborating effect]; *People v. Sanders* (1990) 51 Cal.3d 471, 506 [corroborating evidence need only provide "links in the chain of evidence" and need not point unerringly to guilt].)

Defendants point out the People moved to exclude the expert testimony solely on the ground Arreola's eyewitness identification was sufficiently corroborated by the strength of his identification, Enedino's fingerprints on the red tape, and blood in José's car. In addition, the trial court noted that shell casings and bullets found at defendants' residence were similar to those found at the crime scene. Defendants argue that our review of the court's ruling is limited to this evidence and that we cannot resort to other corroborating evidence admitted subsequently at trial. (Cf. *People v. Welch* (1999) 20 Cal.4th 701, 739 [review of trial court's ruling regarding mental competency is based on evidence before court at the time of the ruling and not evidence produced at a later date].)

Assuming defendants are correct and the evidence upon which the trial court relied at the in limine hearing is not sufficiently corroborative, defendants' claim of error is unavailing because they overlook that the additional challenged evidence can be used in assessing whether they were prejudiced by the error and deprived of a fair trial. Our review discloses it is not reasonably probable that a result more favorable to defendants would have been reached in the absence of the exclusion the expert's testimony. (*Sanders, supra,* 11 Cal.4th at p. 510; *McDonald, supra,* 37 Cal.3d at p. 376; *People v. Watson* (1956) 46 Cal.2d 818, 836.) This conclusion is buttressed by (1) defense counsels' able arguments to the jury concerning the problems with Arreola's identification of defendants, and (2) the trial court's instruction to the jury on the factors relevant in determining the accuracy of eyewitness identification (CALJIC No. 2.92).[FN3]

---

> FN3. The trial court instructed the jury with CALJIC No. 2.92 as follows: "Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crimes charged. [¶] In determining the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy of the witness's identification of the defendant, including, but not limited to, any of the following. [¶] The opportunity of the witness to observe the alleged criminal act, and the perpetrator of the act. The stress, if any, to which the witness was subjected at the time of the observation. [¶] The witness's ability, following the observation, to provide a description of the perpetrator of the act. The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness. [¶] The cross-racial ethnic nature of the identification. The witness's capacity to make an identification. Evidence relating to the witness's ability to identify other alleged perpetrators of the criminal act. [¶] The period of time between the alleged criminal act and the witness's identification. Whether the witness had prior contacts with the alleged perpetrator. The extent to which the witness is either certain or

> uncertain of the identification. [¶] Whether the witness's identification is in fact the product of his own recollection, and any other evidence relating to the witness's ability to make an identification."

Defendants claim exclusion of the evidence deprived them of their defense, which means the error "is of federal constitutional dimension" and reversal is required unless the error is harmless beyond a reasonable doubt. (*Chapman v. California, supra,* 366 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].)  We disagree.

Where a "trial court's ruling did not constitute a refusal to allow defendant to present a defense, but merely rejected certain evidence concerning the defense," the ruling does not constitute a violation of due process, and the appropriate standard of review is whether it is reasonably probable the admission of the evidence would have resulted in a verdict more favorable to defendant.  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325; *People v. Watson, supra,* 46 Cal.2d at p. 836.)  No such reasonable probability exists in this case.